DECISION AND JUDGMENT
{¶ 1} This matter is before the court on the judgment of the Huron County Court of Common Pleas wherein, following a jury trial held on October 30, 2007 through November 1, 2007, appellant, James R. Porter, was found guilty of Count 2 of the indictment, robbery, in violation of R.C. 2911.02(A)(2), a felony of the second degree, and Count 3, theft, in violation of R.C. 2913.02(A)(1)(4), a felony of the fifth degree. Appellant was acquitted of the charges in Count 1 of the indictment, aggravated robbery. Appellant was sentenced, on January 3, 2008, to five years incarceration for Count 2, and *Page 2 
11 months for Count 3, to be served concurrently. Appellant was also fined $500 for Count 2 and $500 for Count 3, and was ordered to pay restitution. Appellant filed a timely notice of appeal.
 {¶ 2} On April 22, 2008, and July 23, 2008, appellant's counsel filed a request to withdraw pursuant to Anders v. California (1967),386 U.S. 738. Anders and State v. Duncan (1978), 57 Ohio App.2d 93, set forth the procedure to be followed by appointed counsel who desires to withdraw for want of a meritorious, appealable issue. In Anders, the United States Supreme Court held that if counsel, after a conscientious examination of the case, determines it to be wholly frivolous he should so advise the court and request permission to withdraw. Id. at 744. This request, however, must be accompanied by a brief identifying anything in the record that could arguably support the appeal. Id. Counsel must also furnish his client with a copy of the brief and request to withdraw and allow the client sufficient time to raise any matters that he chooses. Id. Once these requirements have been satisfied, the appellate court must then conduct a full examination of the proceedings held below to determine if the appeal is indeed frivolous. If the appellate court determines that the appeal is frivolous, it may grant counsel's request to withdraw and dismiss the appeal without violating constitutional requirements or it may proceed to a decision on the merits if state law so requires. Id.
 {¶ 3} In this case, appointed counsel for appellant has satisfied the requirements set forth in Anders, supra. Although notified, appellant never raised any matters for our consideration. In support of his request, counsel for appellant states that, after reviewing *Page 3 
the record of proceedings in the trial court, and after researching the applicable law, he was unable to find any meritorious issue to present on appellant's behalf on appeal. Counsel for appellant addressed the potential for raising assignments of error regarding manifest weight of the evidence, the photo lineup, admission of hearsay testimony, and sentencing.
 {¶ 4} In this case, the following relevant testimony was presented. Angie Risner, the clerk at the Mickey Mart in Greenwich, Ohio, testified that appellant held her at gunpoint, took the money out of the cash register, and rode away on a bicycle, heading north. Jeff Kuhn, a trucker, testified that, because it was 80 or 85 degrees on May 15, 2007, he noticed a person exit the store, at approximately 12:58 p.m., wearing a dark hooded sweatshirt, and leave on a BMX bicycle, heading north.
 {¶ 5} Kevin Verburg, who was chief of police in Greenwich, and on duty the day of the incident, testified that he canvassed the neighborhood to the north of the store. Witnesses, who had seen someone riding a bicycle, led Verburg toward 7 Maple Street, where Verburg found a bicycle, similar to the one involved in the incident, parked between a dump truck and a dirt bike. Verburg spoke with appellant's step-mother, Tracy Porter, who lived at 7 Maple Street, after she arrived home from work. Tracy told Verburg that appellant sometimes stayed at that address. Ryan Porter, appellant's stepbrother, told Verburg that he had not put the bicycle in its location behind the dump truck, but had left it in the yard. When asked if he owned a black hooded sweatshirt, Ryan produced one out of his closet, but told Verburg that when he came home, it was in *Page 4 
the middle of his room on the floor. Verburg prepared a photo array for Risner, who identified appellant as the perpetrator.
 {¶ 6} Meghan Drews testified that appellant approached her back porch at approximately 12:30 or 1:00 p.m. on May 15, 2007, seeking a ride to Shiloh because he was late for work. Drews testified that she could see the back of 7 Maple Street from her back porch. Brandon Mills, Drews' roommate, testified that appellant, who Mills recognized as a neighbor, approached him for a ride around 1:00 p.m., or later, and requested a ride to Shiloh in exchange for $20. Mills testified that he gave appellant a ride to Shiloh. Appellant asked to be dropped off at a house, and told Mills that he would ask the people there to give him a ride, but, after checking in that house, appellant came back to Mills' vehicle and had Mills drop him off at a fire station instead. Appellant never told Mills where he worked.
 {¶ 7} Harold Porter, appellant's father, testified that appellant came to his place of work on May 15, 2007, after lunch, but before 3:00 p.m. Harold testified that appellant told him he had damaged Harold's dump truck that morning and needed to borrow a vehicle to deliver and sell used wooden pallets. Harold also testified that appellant had stayed at Harold's the evening before, on May 14, 2007.
 {¶ 8} Appellant testified that he was not in the Greenwich Mickey Mart that day, but was instead trying to buy and sell a load of gravel, by using his father's dump truck. After setting out with the dump truck, appellant testified that he went over a bump, the hood flew up, and the windshield broke. In his panic, he slammed on the brakes which, *Page 5 
according to appellant, caused a break in the brake line, and caused appellant to lose his cell phone through a hole in the dump truck floor. He testified that he returned to 7 Maple Street, parked the dump truck, put the bike and the dirt bike in front of the dump truck, and sought out his neighbor to get a ride to Shiloh. Appellant tried to borrow his grandfather's vehicle, but found out that his father was using it, so appellant had Mills drive him to his aunt's home, which abuts the fire station's parking lot. Appellant testified that his aunt drove him to his father's work, he borrowed his grandfather's truck from his father, and picked up and sold pallets that day to a local business. Appellant, however, could not recall the name of the business. Appellant testified that, until arrested, he did not return to Greenwich and no family member had contacted him regarding the robbery. On June 12, 2007, after allegedly being turned in by his fiancé, appellant was arrested by the police at a motel in Richland County. Although appellant mostly lived at his mother's address, appellant testified that his mother purchased the room at the motel for him because he was having a dispute with his mother's boyfriend.
 {¶ 9} We have thoroughly reviewed the testimony presented at trial and agree with appellant's counsel that the jury did not clearly lose its way and create such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. See State v.Thompkins (1997), 78 Ohio St.3d 380, 387. Risner gave dubious testimony regarding the type of gun appellant allegedly held on her. As such, appellant was acquitted of the aggravated robbery charge. However, based on the balance of the testimony, there was substantial evidence upon which the jury could have relied in *Page 6 
finding that the state proved the offenses of robbery and theft beyond a reasonable doubt. Accordingly, we find that appellant's potential assignment of error regarding the evidence being against the manifest weight is not well-taken.
 {¶ 10} We additionally find that there are no meritorious issues on appeal regarding the photo array, admission of hearsay testimony, or sentencing. The photo array was never challenged via a motion to suppress and, therefore, appellant has waived all but plain error in this regard. See Evid. R. 103(A)(1). Given the eyewitness testimony, and the circumstantial evidence regarding the bicycle and hooded sweatshirt connecting appellant to the robbery, we find that the outcome of the trial would not have been different without the photo array. SeeState v. Myers, 97 Ohio St.3d 335, 2002-Ohio-6658, ¶ 82.
 {¶ 11} Counsel for appellant objected to Verburg's testimony regarding what Ryan Porter had told him on the day of the incident, regarding the hooded sweatshirt and bicycle being out of place. "The admission or exclusion of relevant evidence rests within the sound discretion of the trial court." State v. Sage (1987), 31 Ohio St.3d 173, paragraph two of the syllabus. Ryan testified at trial for the state, but was treated as a hostile witness. Because Ryan's trial testimony differed from what he had told Verburg on the day of the incident, Verburg's testimony concerned inconsistencies with Ryan's trial testimony. As such, Verburg's testimony was not hearsay. See Evid. R. 801(D)(1). Accordingly, we find that it was not an abuse of the trial court's discretion to allow the state to impeach Ryan's trial testimony through Verburg. *Page 7 
 {¶ 12} We further find no meritorious issues with respect to sentencing. Appellant was fully advised and received a sentence within the statutory amount. Further, upon our own independent review of the record, we find no other grounds for a meritorious appeal.
 {¶ 13} This appeal is, therefore, found to be without merit and is wholly frivolous. Appellant's counsel's motion to withdraw is found well-taken and is hereby granted. The judgment of the Huron County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App. R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Huron County.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App. R. 27. See, also, 6th Dist. Loc. App. R. 4.
Peter M. Handwork, J., Arlene Singer, J., Thomas J. Osowik, J. CONCUR. *Page 1